**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| JACOB DOE, by and through ASHLEY DOLLAR, his Parent and Next Friend, | Civil Action No. |
| Plaintiff, | |
| v. | 1:21-cv-00185 |
| WORTH COUNTY SCHOOL DISTRICT, COURTNEY MICHELLE JORDAN, and JUDITH ANN SMITH, | |
| Defendants. | **JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

COMES NOW Plaintiff Jacob Doe, by and through Ashley Dollar, his Parent and Next Friend, and brings this action pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq*., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the Constitutions of the United States and the State of Georgia and 42 U.S.C. § 1983, and tort claims under the laws of the State of Georgia.  Plaintiff alleges that, while enrolled as a student, Defendants Worth County School District, Courtney Michelle Jordan, and Judith Ann Smith violated Plaintiff's constitutional rights, subjected Plaintiff to discrimination based on his disability, and engaged in a variety of intentional torts as the result of physical abuse that Plaintiff sustained,  respectfully showing the Court as follows:

### JURISDICTION AND VENUE

1.

This Court has original jurisdiction over the subject matter of this civil action arising under the Constitution and laws of the United States pursuant to 28 U.S.C. § 1331.

2.

This Court should exercise its supplemental jurisdiction over the subject matter of this civil litigation arising under the Constitution and the laws of the State of Georgia pursuant to 28 U.S.C. § 1367 as said claims are so related to claims in this action within the Court's original jurisdiction that they form part of the same case and controversy under Article III of the United States Constitution.

3.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are subject to the court's personal jurisdiction with respect to this action, and the events underlying this action, occurred in this judicial district.

**PARTIES**

4.

Plaintiff Jacob Doe, by and through Ashley Dollar, his Parent and Next Friend, (hereinafter, "Plaintiff" or "Jacob") is a citizen of the United States and a resident of the State of Georgia.

5.

At all times relevant to this lawsuit Jacob had, and continues to have, a disability within the meaning of both the Americans with Disabilities Act (hereinafter "ADA" and Section 504 of the Rehabilitation Act (hereinafter, "Section 504").

6.

As a result of his disability, as alleged herein, Jacob is considered an "incompetent person," and as a result, his mother Ashley Dollar, is authorized to bring this action in the capacity as his Parent and Next Friend. Fed. R. Civ. P. 17(c)(2).

7.

Defendant Worth County School District (hereinafter, "Defendant Worth County") is a local school district created under the Constitution and laws of the State of Georgia. Defendant Worth Schools has the capacity to sue and be sued by special acts of the legislature of the State of Georgia. Defendant Worth County may be served with process through its chief executive officer pursuant to O.C.G.A. § 9-11-4(e). Defendant's chief executive officer is its Superintendent, Nehemiah Cummings, who may be found at 103 Eldridge Street, Sylvester, Worth County, Georgia 31791.

8.

Defendant Worth County receives financial payments and/or grants of assistance from both the State of Georgia and the United States and is considered a covered program, service, and/or activity under Section 504 of the Rehabilitation Act.

9.

Defendant Worth County is a recipient of Federal financial assistance from the United States Department of Education, and as a result, the Regulations pertaining to Section 504 of the Rehabilitation Act apply to said Defendant. 34 C.F.R. § 104.2.

10.

Defendant Worth County is a service, program, or activity of a State or local government and is considered a covered service, program, and/or activity under Title II of the Americans with Disabilities Act.

11.

Defendant Courtney Michelle Jordan (hereinafter, "Defendant Jordan") is a citizen of the United States and a resident of the State of Georgia. At all times relevant to this suit, Defendant

Jordan was employed with Defendant Worth County. Defendant Jordan may be served with process by delivering it to her domicile located at 603 Carroll Lane, Sylvester, Worth County, Georgia 31791.

12.

Defendant Judith Ann Smith (hereinafter, "Defendant Smith") is a citizen of the United States and a resident of the State of Georgia. At all times relevant to this suit, Defendant Smith was employed with Defendant Worth County. Defendant Smith may be served with process by delivering it to her domicile.

**STATEMENT OF FACTS**

13.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 though 12, as if the same were set forth herein.

14.

Plaintiff Jacob was born on April 19, 2003.

15.

Jacob was diagnosed with an autism spectrum disorder (hereinafter, "ASD") when he was an infant. Specifically, Jacob, and individuals like him with an ASD, experience difficulty with communication and interaction with others, restricted interests and repetitive behaviors, and symptoms that make it difficult to function in school, work, and other areas of life.

16.

Additionally, Jacob is severely limited in his non-verbal forms of communication and he is unable to communicate verbally. Jacob has also suffered from a visual impairment since birth.

17.

Jacob has experienced developmental delays throughout his lifetime, and while Jacob is currently a teenager, he displays developmental milestones equivalent to a child of less than two years old.

18.

Ashley Dollar is Jacob's mother.

19.

Jacob has been enrolled in Worth County's special education program at all times relevant to this suit. Specifically, since August 2019, Jacob has been enrolled and attending Worth County High School.

20.

Throughout his time in middle school and high school, Jacob has utilized Defendant Worth County's special transportation services to travel to and from school.

21.

From the time that Jacob began attending Worth County High School until around October 2019, Jacob was transported to and from school each day without incident.

22.

In October 2019, Jacob began riding a different school bus, which was driven by Defendant Smith.

23.

When Jacob began riding this new bus, Defendant Jordan served as the bus attendant. The bus monitor's role includes, but is not limited to loading, unloading, and properly securing all

students dependent on mobility assistance aides or mobile seating devices and supervise and assist students during transportation.

24.

At all times relevant to the instant litigation, Defendants Jordan and Smith were employees of Defendant Worth County.

25.

As personnel of Defendant Worth County, Defendants Jordan and Smith are mandated, by the laws of the State of Georgia, to report the abuse or suspected abuse of a child to the person in charge of the school district.

26.

As a student enrolled in Defendant Worth County's special education program, Defendant Worth County was aware of Jacob's condition and his disabilities.

27.

Since Defendant Jordan was responsible for assisting Jacob with his special needs while riding the school bus, Defendant Jordan was aware of Jacob's condition and his disabilities.

28.

As the driver of the special transportation services vehicle that Jacob was assigned, Defendant Smith was aware of Jacob's condition and disabilities.

29.

During the month of October 2019, Jacob received six disciplinary referrals for behavior that he supposedly exhibited during his transportation to and from school.

30.

This misbehavior was out of character for Jacob, and it was not common for Jacob to receive any disciplinary referrals.

31.

Prior to October 2019, Jacob did not exhibit conduct while being transported to and from school that was severe enough to require disciplinary action.

32.

School officials failed to advise Ms. Dollar of the problems that Jacob was experiencing on the bus.  Initially, the only suggestion that Ms. Dollar received that something was amiss with Jacob was a text message that she received from Defendant Jordan on October 10, 2019.  However, instead of advising Ms. Dollar of physical abuse that Jacob was being subjected at that time, Defendant Jordan only demanded that Jacob's family compensate Defendant Jordan for a hole that Jacob had allegedly, and without any further explanation, torn in Defendant Jordan's shirt.

33.

Jacob's mother, Ms. Dollar, was not informed about any of the disciplinary referrals until an Individualized Education Plan ("IEP") meeting was held in the final days of October 2019 .

34.

During the IEP meeting, which included Ms. Dollar, Director of Special Education Jennifer Turnbull, and several other employees of Defendant Worth County including the Assistant Principal, Ms. Dollar was informed for the first time that Jacob had received the disciplinary referrals over the prior month for conduct that he had allegedly exhibited on the bus.

35.

Ms. Dollar was shocked to hear about the disciplinary referrals.  Ms. Dollar felt like this was out of character for Jacob and requested that the school administrators look into what might have been causing her son to exhibit these behaviors.

36.

After the October IEP meeting, Ms. Turnbull contacted Defendant Worth County's Director of Transportation Rusty Parten to pull the footage from the video surveillance system on the bus in order to observe Jacob's supposed misconduct.

37.

Upon information and belief, Ms. Turnbull reviewed footage captured both on days when Jacob has supposedly misbehaved, as well as days in which Jacob had not been accused by the transportation staff of exhibiting any misbehavior.

38.

On November 5, 2019, Ms. Turnbull contacted Ms. Dollar to inform her that Defendant Jordan had been suspended based on her conduct that was observed during her review of the video surveillance footage.

39.

When Ms. Dollar asked what Defendant Jordan could be seen doing in the video, Ms. Turnbull responded, "stomping and clawing and stuff like that."

40.

Jacob's parents went to the Defendant Worth County's Transportation Department in an attempt to review the video recordings involving Defendant Jordan's interactions with Jacob.

41.

However, Jacob's parents were shown only a portion of one of the several videos documenting Defendant Jordan's conduct toward Jacob

42.

In the segment of the video that Jacob's parents were shown, Defendant Jordan can be seen grabbing the back of Jacob's leg and pushing and twisting his foot as though Defendant Jordan were extinguishing a cigarette butt on the ground.

43.

Ms. Dollar later recalled that there had been several recent occasions where Jacob had returned home from school with marks, abrasions, bruises, and scratches on his arms and legs. However, these injuries did not initially strike Ms. Dollar as unusual because Jacob has been known to cause injury to himself from time to time.

44.

In addition to bruises on his toes, Ms. Dollar had discovered that Jacob's toenail had been cracked and had recently been bleeding.

45.

While Jacob's parents have still not had the opportunity to view all of the videos, the Indictment of a Grand Jury empaneled for the Superior Court of Worth County reflects what occurred to Jacob on his bus during the month of October 2019.

46.

On or about October 8, 2019, Defendant Jordan used her body to sit on Jacob, resulting in obvious physical pain to Jacob.

47.

On or about October 10, 2019, Defendant Jordan again used her body to sit on Jacob, resulting in obvious physical pain to Jacob

48.

On or about October 14, 2019, Defendant Jordan pushed her right knee into Jacob's body, while pushing Jacob's hand into his own head and forcing his head into one of the windows of the bus, resulting in obvious physical pain to Jacob

49.

On or about October 15, 2019, Defendant Jordan bent Jacob's fingers backwards, resulting in obvious physical pain to Jacob

50.

On or about October 17, 2019, Defendant Jordan once again bent Jacob's fingers backwards, resulting in obvious physical pain to Jacob

51.

On or about October 18, 2019, Defendant Jordan used her own foot to stomp on Jacob's foot and she, once again, bent Jacob's fingers backwards, resulting in obvious physical pain to Jacob

52.

On or about October 21, 2019, Defendant Jordan struck Jacob with her closed fist, grabbed Jacob's hand, bent his fingers backward, grabbed Jacob's leg, and used her fingernails to dig into his skin, all resulting in obvious physical pain to Jacob

53.

Additionally, also on or about October 21, 2019, Defendant Jordan sprayed Jacob with a substance in an aerosol container, which appeared to be Lysol disinfectant spray or a similar product, causing Jacob to experience additional harm.

54.

On or about October 25, 2019, Defendant Jordan slapped Jacob on his leg with her open palm, stepped on Jacob's bare foot, and used her fingernails to dig into Jacob's skin, all resulting in obvious physical pain to Jacob

55.

Even assuming that Jacob had the physical ability to move away from Defendant Jordan's physically abusive conduct, he was otherwise prevented from doing so because he was physically restrained by a seat belt while riding the bus.

56.

Moreover, Jacob was neither physically able to defend himself from Defendant Jordan's abuses, nor was he able to see or comprehend what was happening as a result of his disabilities.

57.

Jacob had not done anything to provoke Ms. Jordan.

58.

As a result of his inability to communicate, Jacob was unable to seek out help from his parents or any other responsible adult to report or stop the continued abuse.

59.

Defendant Jordan committed these acts intentionally, in bad faith, and with the sole intent of causing Jacob pain and fear.

60.

As a result of Defendant Jordan's actions Jacob suffered physical injuries in the form of severe scratches and bruises all over his body as well as a shattered toenail from when Defendant Jordan stamped on his foot.

61.

Defendant Jordan chose to abuse Plaintiff because of his disability.

62.

Defendant Jordan knew that Plaintiff was non-verbal and would be unable to communicate his need for help to anyone.

63.

As a result, Defendant Jordan specifically chose to abuse Plaintiff due to his disabilities because she believed that she would be able to get away with her mistreatment of Plaintiff due to his disabilities.

64.

Defendant Jordan was arrested in or about November 2019 due to her mistreatment of Jacob

65.

Defendant Jordan was charged with multiple felonies and misdemeanors, including Simple Battery, Cruelty to Children in the First and Second Degree, and Failure to Report Suspected Child Abuse.

66.

The aforementioned conduct exhibited by Defendant Jordan to ward Jacob were not only recorded by the bus's security cameras, but they were also personally observed by the driver of the bus, Defendant Smith.

67.

Defendant Smith failed and refused to stop or prevent Defendant Jordan from her continuing physical abuse of Jacob.

68.

Defendant Smith failed to report Defendant Jordan's physical abuse of Jacob to any representative of Defendant Worthy County or otherwise.

69.

As a result of Defendant Smith's failure and refusal to stop, prevent, and/or report Defendant Jordan's conduct, the abuse of Jacob continued throughout the month of October 2019.

70.

Initially, Defendant Worth County did not renew Defendant Jordan's employment in November 2019, but said Defendant failed to otherwise take any disciplinary action against Defendant Jordan.

71.

Initially, Defendant Worth County temporarily suspended Defendant Smith's, but it fully reinstated Defendant Smith soon thereafter and was subjected to no other disciplinary acts despite her failure to stop, prevent, and/or report continuous abuse of a disabled student for almost a month.

72.

Before he was subjected to the conduct alleged herein, Jacob suffered from stress-induced seizures as a result of his disabilities.

73.

While the conduct alleged herein did not cause Jacob to begin experiencing such seizures, the frequency of Jacob's seizures increased substantially during the time in which he rode the school bus driven by Defendant Smith and monitored by Defendant Jordan.

74.

Before being subjected to the conduct underlying this Complaint, Jacob was only experiencing seizures approximately one time per month.  However, after Defendant Jordan had apparently begun physically abusing Jacob, he was experiencing around ten seizures per day.

75.

Since the time in which Jacob was abused by Defendant Jordan, he has exhibited behaviors indicating that he remains traumatized and fearful for his safety when he is transported or escorted to school.

76.

Indeed, Jacob's fear of school buses has become so intense, that it has become difficult for Jacob's family to get Jacob to ride any other school bus.

77.

As of March 2020, Jacob began attending school virtually due to the COVID-19 pandemic. As a result of the remote learning, along with the end of the physical abuse, the Jacob experiences far fewer seizures than he had during the month of October 2019.

78.

Jacob continues to suffer from severe mental and emotional distress as a result of the conduct of Defendants Jordan and Smith. However, due to Jacob's inability to engage in verbal communication and his visual impairment, Jacob is unable to participate in traditional forms of therapy to address the mental and emotional conditions brought on by the conduct of Defendants Jordan and Smith.

79.

Moreover, Jacob cannot be prescribed medication to address his mental and emotional health conditions because of the medications that he is already required to take for his preexisting disabilities.

80.

Jacob's medical providers are unable to estimate when, if ever, Jacob's mental and emotional conditions will improve and return to levels prior to being subjected to the physical abuse alleged herein.

81.

On September 25, 2020, Jacob and his parents served Defendant Worth County with notice of their claims underlying the instant litigation. To date, said Defendant has not responded to the substance of the allegations.

**COUNT I:**
**DEPRIVATION OF SUBSTANTIVE DUE PROCESS**
**(Defendants Worth County and Jordan)**

82.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 81, as if the same were set forth herein.

83.

The Fourteenth Amendment to the Constitution of the United States of America guarantees that no government will "deprive any person of life, liberty, or property, without due process of law."

84.

"Georgia courts have recognized that the due process guarantees of the Georgia and federal constitutions are 'substantively identical.'" *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1136 n. 25 (N.D. Ga. 2016) (citing *Cherokee Cnty. v. Greater Atlanta Homebuilders Ass'n, Inc.*, 255 Ga. App. 764, 767, n. 1, 566 S.E.2d 470 (2002)).

85.

"Excessive corporal punishment is actionable under the substantive component of the due process clause." *Williams*, 181 F. Supp. 3d at 1133 (citing *Ingraham v. Wright*, 430 U.S. 651 (1977); *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069 (11th Cir.2000); *Kirkland ex rel. Jones v. Greene Cnty. Bd. of Educ.*, 347 F.3d 903 (11th Cir.2003); *Hatfield v. O'Neill*, 534 F'Appx. 838 (11th Cir.2013)). "To state a substantive due process claim, the student's allegations of excessive corporal punishment must 'rise to the level of arbitrary and conscience-shocking behavior." *Id.* (quoting *Neal*, 299 F.3d at 1075).

86.

As alleged herein, Defendant Jordan did not have *any* reason, much less a legitimate one, to apply corporal punishment to Plaintiff.

87.

As a result of the non-existent need of force, the physical abuse exercised by Defendant Jordan was totally unrelated to the need for its use.

88.

Even if Plaintiff had exhibited any behavior that warranted corrective action or other discipline, any such behavior was typical for individuals with significant physical and mental disabilities like Plaintiff.

89.

As alleged herein, the conduct of which Defendants Worth County and Jordan subjected Plaintiff caused Plaintiff serious bodily, mental, and emotional injury.

90.

Due to the severity and repeated nature of her conduct, Defendant Jordan clearly had the subjective intent to harm Plaintiff.

91.

Defendant Jordan's actions presented a foreseeable risk of seriously bodily injury, reflecting that Defendant Jordan acted maliciously when she subjected Plaintiff to the physical abuse alleged herein.

92.

Defendant Jordan's conduct, as alleged herein, consisted of a persistent pattern of abuse against Plaintiff that occurred on an ongoing and repeated basis for at least one month.

93.

Defendant Worth County was aware of Defendant Jordan's ongoing abuse of Plaintiff.

94.

Even if Defendant Worth County did not have actual knowledge of Defendant Jordan's actions alleged herein, said Defendant should have been aware that Plaintiff was being abused by Defendant Jordan as a result of Plaintiff's physical injuries, changes to Plaintiff's demeanor and

conduct, and because of the unusual number of disciplinary referrals and the details of the incidents described therein.

95.

After Defendant Worth County had reviewed the video footage and had actual knowledge of the actions and inactions of Defendants Jordan and Smith, Defendant Worth County failed and refused to immediately discipline and remove Defendants Jordan and Smith.  As a result, Defendant Worth County exhibited a deliberate indifference to Plaintiff's rights and the abuse that he had been subjected.

96.

Plaintiff continued to suffer from abuse and violation of his rights as a result of Defendant Worth County's conduct alleged herein.

97.

Accordingly, Defendants Worth County and Jordan engaged in conduct that violated Plaintiff's right to Substantive Due Process, as guaranteed by the Fourteenth Amendment to the Constitution of the United States and the Constitution of the State of Georgia, and said Defendants are liable to Plaintiff pursuant to Section 1983 in an amount to be proven at trial, including reasonable attorney's fees and costs of litigation.

**COUNT II:**
**DEPRIVATION OF EQUAL PROTECTION**
**(Defendants Worth County and Jordan)**

98.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 81, as if the same were set forth herein.

99.

"The Equal Protection Clause commands that no State shall deny to any person within its jurisdiction the equal protection of the laws." *Williams*, 181 F.Supp.3d at 1136 (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 429 (1985) (internal quotations omitted)).

100.

"The Equal Protection Clause of the Georgia constitution is coterminous with that of the federal constitution," and the same analysis should apply to Plaintiff's state and federal Equal Protection claims. *Id.* (citing *Smith v. Atlanta Indep. Sch. Dist.*, 633 F.Supp. 2d 1364, 1380 (N.D. Ga. 2009)).

101.

As alleged herein, Plaintiff has disabilities and special needs that cause Plaintiff to be a member of an identifiable class of individuals who has been subjected to disparate treatment and discrimination by Defendants.

102.

Defendants did not have any rational basis for subjecting Plaintiff to physical abuse or failing to address the abuse once it had been discovered.

103.

Students outside of the class for which Plaintiff belongs – students enrolled in Worth County Schools who do not suffer from disabilities or have special needs – were not subjected to the same abusive treatment as Plaintiff and individuals within his class.

104.

Accordingly, Defendants Worth County and Jordan engaged in conduct that violated Plaintiff's right Equal Protection of the law, as guaranteed by the Fourteenth Amendment to the

Constitution of the United States and the Constitution of the State of Georgia, and said Defendants are liable to Plaintiff pursuant to Section 1983 in an amount to be proven at trial, including reasonable attorney's fees and costs of litigation.

## COUNT III:
## DISCRIMINATION IN VIOLATION OF
## TITLE II OF THE AMERICANS WITH DISABILITIES ACT
### (Defendant Worth County)

### 105.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 81, as if the same were set forth herein.

### 106.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

### 107.

To state a claim under Title II of the ADA, a plaintiff must demonstrate "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).

### 108.

Defendant Worthy County is considered a public entity under Title II of the Americans with Disabilities Act. 42 U.S.C. § 12131.

109.

Defendant Worth County, as a local school district, is not an arm of the state for purpose of Title II of the ADA, and is therefore not entitled to Eleventh Amendment immunity with respect to Plaintiff's claim brought under the ADA. *Lightfoot v. Henry Cnty. Sch. Dist.*, 771 F.3d 764, 778 (11th Cir. 2014).

110.

As alleged herein, Plaintiff is considered a person with a disability under the ADA as he is visually impaired and suffers from a form of nonverbal autism that has been classified as a "profound intellectual disability."

111.

These are impairments that substantially limit several major life activities and that result in a substantial impediment to major life activities. Specifically, Plaintiff is visually impaired and is diagnosed with a form of nonverbal autism, which causes him trouble with completing basic tasks of everyday life as Plaintiff is considered to have the same mental capacity as a one-year-old child. These disabilities substantially limit almost every major life activity for Plaintiff, including his ability to dress himself, bathe himself, feed himself, care for himself, complete schoolwork, and interact with others.

112.

In addition to being considered a person with a disability under the ADA, Plaintiff has a history of a disability.

113.

In addition to being considered a person with a disability under the ADA, Plaintiff was perceived as having a disability by Defendant Worth County.  This is evidenced by Defendant's

possession of a variety of psychological evaluations and reports noting his disabilities, its classification of Plaintiff as a special needs student enrolled in the special education program among a variety of other factors.

114.

Defendant Worth County discriminated against Plaintiff by subjecting Plaintiff to repeated and ongoing physical abuse by an employee of Defendant Worth County due to Plaintiff's disability.

115.

Defendant Worth County further discriminated against Plaintiff when Defendants Jordan and Smith failed and refused to prevent or report the ongoing physical abuse due to Plaintiff's disability.

116.

Defendant Worth County's employees were aware of the discriminatory mistreatment that Plaintiff was being subjected to but failed to take any action to end the mistreatment.

117.

Despite this knowledge of discrimination and having the authority to correct any and all discrimination, no action was taken to rectify the problem. Thus, Defendant Worth County, including through its employee Defendant Smith and others, acted with deliberate indifference in its discrimination of Plaintiff.

118.

Even after Defendant Worth County clearly had actual notice of the abuse, said Defendant failed and refused to correct or sufficiently address the ongoing abuse of which Plaintiff was subjected solely on account of Plaintiff's disability.

119.

Title II of the Americans with Disabilities Act creates a private cause of action against Defendant, and Defendant is not entitled to sovereign immunity. *United States v. Georgia*, 546 U.S. 151, 158-89 (2006).

120.

As alleged herein, Defendant's actions, including the failure to end the deliberate mistreatment and discrimination against Plaintiff, amounting to the intentional discrimination of Plaintiff as a direct result of his disabilities, in violation of Title II of the Americans with Disabilities Act.

121.

Plaintiff has been injured by Defendant's discrimination due to its knowing intentional failure to prevent his physical and mental abuse on account of his disability, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including injunctive relief, compensatory and punitive damages, and reasonable attorney's fees and costs of litigation, in an amount to be proven at trial, including reasonable attorney's fees and costs of litigation..

**COUNT IV:**
**DISCRIMINATION IN VIOLATION OF**
**SECTION 504 OF THE REHABILITATION ACT**
**(Defendant Worth County)**

122.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 81, as if the same were set forth herein.

123.

Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability in the United States, … shall, solely by reason of her or his disability, be excluded from

the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

124.

To state a claim under Section 504 of the Rehabilitation Act, a plaintiff must demonstrate "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).

125.

"Discrimination claims under the ADA and Rehabilitation act are governed by the same standards, and the two claims are generally discussed together." *J.S., III by and through J.S., Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017) (citing *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

126.

Defendant Worth County, as a local school district, is not an arm of the state for purpose of Section 504 of the Rehabilitation Act, and is therefore not entitled to Eleventh Amendment immunity with respect to Plaintiff's claim brought under the same. *Lightfoot v. Henry Cnty. Sch. Dist.*, 771 F.3d 764, 778 (11th Cir. 2014).

127.

For the reasons set forth in Count III, *supra*, which is explicitly incorporated herein, Defendant Worth Count discriminated against Plaintiff based on his disability, including Defendant's physical abuse of Plaintiff, Defendant's failure to prevent the abuse due to his

disability, Defendant's failure to report the abuse due to his disability, and Defendant's failure and

refusal to properly address or remedy the abuse after it had been discovered due to Plaintiff's

disability, all in violation of Section 504 of the Rehabilitation Act of 1973.

128.

Accordingly, Plaintiff is entitled to all damages available by law for violation of his rights

under Section 504 of the Rehabilitation Act of 1973 in an amount to be proven at trial, including

reasonable attorney's fees and costs of litigation.

## COUNT V:
## CONSPIRACY IN VIOLATION OF SECTION 1983
### (Defendants Jordan and Smith)

129.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in

Paragraphs 1 through 81, as if the same were set forth herein.

130.

"To establish a conspiracy claim under § 1983, a plaintiff must allege three elements: "(1)

a violation of [his] federal rights; (2) an agreement among the Defendants to violate such a right;

and (3) an [underlying] actionable wrong." *Williams*, 181 F.Supp.3d at 1148 (citing *Gibbons v.*

*McBride*, 124 F.Supp.3d 1342, 1379 (S.D.Ga.2015)).

131.

As alleged herein, Defendant Jordan and Defendant Smith agreed to engage in conduct that

violated Plaintiff's constitutional and statutory rights.

132.

Absent direct evidence of said agreement between Defendants Jordan and Smith, this

agreement may be inferred by the relationship between said Defendants, their overt acts and

concert of action, and the totality of the circumstances, including but not limited to the fact that Defendant Smith not only observed Defendant Jordan physically abusing Plaintiff and failed to report said conduct, but that Defendant Smith instead issued behavior referrals to Plaintiff for incidents in which he had actually been the victim.

133.

As a direct and sole result of the conspiracy between Defendant Jordan and Defendant Smith, Plaintiff was subjected to ongoing and repeated incidents of physical abuse and violation of his constitutional and statutory rights.

134.

Defendants Jordan and Smith are liable for their conspiracy to violate Plaintiff's constitutional rights, and Plaintiff is entitled to all relief allowable under Section 1983 in an amount to be proven at trial, including reasonable attorney's fees and costs of litigation.

**COUNT VI:**
**ASSAULT**
**(Defendant Jordan)**

135.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 81, as if the same were set forth herein.

136.

As alleged herein, Defendant Jordan was engaged in conduct directed toward Plaintiff that was intended to create a reasonable apprehension of immediate harmful contact to Plaintiff's person.  This conduct includes, but is not limited to the ongoing physical abuse that Defendant Jordan directed toward Plaintiff.

137.

As alleged herein, Defendant Jordan's conduct evidenced that it was her intent for Plaintiff to have a reasonable apprehension of immediate harmful contact to Plaintiff's person.

138.

Defendant Jordan knew that her ongoing physical abuse of Plaintiff would cause Plaintiff to have a reasonable apprehension of immediate harmful or offensive contact.

139.

As alleged herein, Defendant Jordan's contact indeed caused Plaintiff to have a reasonable apprehension of immediate harmful and offensive contact to Plaintiff's person, an apprehension that was ultimately justified.

140.

Plaintiff suffered physical, mental, and emotional injuries as a result of Defendant Jordan's conduct, and she will be liable to Plaintiff for assault in an amount to be proven at trial, including reasonable attorney's fees and costs of litigation.

**COUNT VII:**
**BATTERY**
**(Defendant Jordan)**

141.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 81, as if the same were set forth herein.

142.

As alleged herein, during the month of October 2019, Defendant Jordan routinely and repeatedly made harmful and offensive contact with Plaintiff's person.

143.

As alleged herein, Defendant Jordan knew with substantial certainty that Plaintiff would suffer physical, mental, and emotional injuries as a result of her harmful and offensive contact to Plaintiff's person.  As a result, Defendant Jordan acted with general intent to batter Plaintiff.

144.

As alleged herein, Defendant Jordan had the specific intent to cause physical, mental, and emotional injuries when she made the harmful and offensive contact with Plaintiff's person.

145.

As alleged herein, Plaintiff suffered from physical, mental, and emotional injuries as a result of Defendant Jordan's harmful and offensive contact made with Plaintiff's person.

146.

Indeed, Defendant Jordan's harmful and offensive contact made with Plaintiff's person was the substantial and primary factor that caused Plaintiff to suffer from physical, mental, and emotional injuries.

147.

As a result, Defendant Jordan is liable for battery against Plaintiff, and Plaintiff is entitled to all damages allowable under the law, in an amount to be proven at trial, including reasonable attorney's fees and costs of litigation.

### COUNT VIII:
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Defendant Jordan)

148.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 81, as if the same were set forth herein.

149.

Defendant Jordan's physical abuse of Plaintiff, as alleged herein, was ongoing and continuous, was directed at a minor child with profound mental and physical disabilities, and was committed by a person who was not only intended to assist children with disabilities, but who was tasked with protecting them.  As a result, Defendant Jordan's actions should be considered both extreme and outrageous.

150.

As alleged herein, Defendant Jordan knew with substantial certainty that Plaintiff would suffer physical, mental, and emotional injuries as a result of her conduct.  As a result, Defendant Jordan acted with general intent to batter Plaintiff.

151.

As alleged herein, Defendant Jordan had the specific intent to cause physical, mental, and emotional injuries when she made the harmful and offensive contact with Plaintiff's person.

152.

Notwithstanding Defendant Jordan's general and specific intent, Defendant Jordan acted with gross recklessness.

153.

As alleged herein, Plaintiff not only suffered physical injuries as a direct result of Defendant Jordan's conduct, Plaintiff suffered and continues to suffer from mental and emotional trauma as a result of such actions.

154.

Defendant Jordan's actions were the substantial and primary cause of the physical, mental, and emotional injuries sustained by Plaintiff.

155.

As a result, Defendant Jordan is liable for her intentional infliction of emotional distress toward Plaintiff, and Plaintiff is entitled to all damages allowable under the law, in an amount to be proven at trial, including reasonable attorney's fees and costs of litigation.

## COUNT IX:
## FALSE IMPRISONMENT
### (Defendant Jordan)

156.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 81, as if the same were set forth herein.

157.

As alleged herein, Defendant Jordan caused Plaintiff to be restrained by a seat belt before she subjected Plaintiff to several instances of physical abuse.

158.

As alleged herein, during several instances in which Defendant Jordan subjected Plaintiff to physical abuse, she specifically restrained Plaintiff by grabbing or holding onto Plaintiff's person.

159.

Plaintiff was aware that he was being confined and restrained both by a seat belt that Defendant Jordan had secured and by Defendant Jordan herself.

160.

Plaintiff's school bus was a bounded area, and Plaintiff was otherwise aware that he had no reasonable means of escape from Defendant Jordan and her physical abuse.

161.

As a result of Defendant Jordan's false imprisonment, Plaintiff was injured by way of Defendant Jordan's subsequent physical abuse of Plaintiff and sever physical, mental, and emotional injuries.

162.

Defendant Jordan is liable for her false imprisonment of Plaintiff, and Plaintiff is entitled to all damages available under the law in an amount to be proven at trial, including reasonable attorney's fees and costs of litigation.

## COUNT X:
## PUNITIVE DAMAGES
### (Defendant Jordan)

163.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 81, as if the same were set forth herein.

164.

An award of punitive damages is available to claimants pursuant to O.C.G.A § 51-12-5.1.

165.

In this instance, there is clear and convincing evidence that Defendant Jordan exhibited willful misconduct, malice, wantonness, oppression, and the entire want of care that would raise the presumption of conscious indifference to the consequences when she subjected Plaintiff to the physical abuse alleged herein.

166.

As a result of Defendant Jordan's conduct, Plaintiff is entitled to an award of punitive damages in an amount to be proven at trial and an award of not less than $250,000.00.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

WHEREFORE. Plaintiff Jacob Doe, by and through Ashley Dollar, his Parent and Next Friend, prays for the following relief:

1) The Summons and Process be issued to Defendant Worth County School District, Defendant Courtney Michelle Jordan, and Defendant Judith Ann Smith, and that said Defendants be served as provided by law;

2) That this matter be tried before a jury of twelve;

3) That judgment be awarded for and in favor in Plaintiff and against Defendant Worth County School District and Defendant Courtney Michelle Jordan on Count I for Deprivation of Substantive Due Process and grant Plaintiff all relief allowable pursuant to 42 U.S.C. § 1983 and the laws of the State of Georgia;

4) That judgment be awarded for and in favor in Plaintiff and against Defendant Worth County School District and Defendant Courtney Michelle Jordan on Count II for Deprivation of Equal Protection and grant Plaintiff all relief allowable pursuant to 42 U.S.C. § 1983 and the laws of the State of Georgia;

5) That judgment be awarded for and in favor in Plaintiff and against Defendant Worth County School District on Count III for Discrimination Based on Disability and grant Plaintiff all relief allowable pursuant to Title II of the Americans with Disabilities Act;

6) That judgment be awarded for and in favor in Plaintiff and against Defendant Worth County School District on Count IV for Discrimination Based on Disability and grant Plaintiff all relief allowable pursuant to Section 504 of the Rehabilitation Act;

7) That judgment be awarded for and in favor in Plaintiff and against Defendant Courtney Michelle Jordan and Judith Ann Smith on Count V for Conspiracy and grant Plaintiff all relief allowable pursuant to 42 U.S.C. § 1983;

8) That judgment be awarded for and in favor in Plaintiff and against Defendant Courtney Michelle Jordan on Count VI for Assault and grant Plaintiff all relief allowable pursuant the laws of the State of Georgia;

9) That judgment be awarded for and in favor in Plaintiff and against Defendant Courtney Michelle Jordan on Count VII for Battery and grant Plaintiff all relief allowable pursuant the laws of the State of Georgia;

10) That judgment be awarded for and in favor in Plaintiff and against Defendant Courtney Michelle Jordan on Count VIII for Intentional Infliction of Emotional Distress and grant Plaintiff all relief allowable pursuant the laws of the State of Georgia;

11) That judgment be awarded for and in favor in Plaintiff and against Defendant Courtney Michelle Jordan on Count IX for False Imprisonment and grant Plaintiff all relief allowable pursuant the laws of the State of Georgia;

12) That judgment be awarded for and in favor in Plaintiff and against Defendant Courtney Michelle Jordan on Count X for Punitive Damages and grant Plaintiff an amount to be proven at trial of not less than $250,000.00; and,

13) For such other relied as the Court shall deem just and proper.

Respectfully submitted, this 7th day of October, 2021

KENNETH E. BARTON III
Georgia Bar No. 301171
JOHN M. MCCALL
Georgia Bar No. 778954
*Attorneys for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
Telephone: (478) 841-9007
Facsimile: (478) 841-9002
keb@cooperbarton.com
jmm@cooperbarton.com